UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL S.,<br><br>    Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.  4:20-CV-00578-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Daniel S.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 25) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a thirty-eight-year-old man with a history of back, neck, and shoulder pain due to ankylosing spondylitis, degenerative disc disease, and arthritis.  AR[1] 17, 203; *see also* Pt.'s Br. at 1, 3 (Dkt. 25).  On March 19, 2018, Petitioner filed an application for social security disability income ("SSDI") alleging a disability onset date of February 22, 2018.  AR 15.  The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On January 23, 2020, the claim went to a hearing

---

[1] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 1**

before ALJ Wynne O'Brien-Persons. *Id.* On March 2, 2020, the ALJ issued a decision that was unfavorable to Petitioner. AR 12-27.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-6.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises two points of error. First, Petitioner contends that the ALJ failed to properly evaluate the opinions of Dr. Richard Hill. Pt.'s Br. at 7-12 (Dkt. 25). Second, Petitioner maintains that the ALJ made similar errors in discounting the opinions of reviewing state consultant Dr. Myung Song. *Id.* at 12-14.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 2**

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial

**MEMORANDUM DECISION AND ORDER - 3**

work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

**MEMORANDUM DECISION AND ORDER - 4**

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: ankylosing spondylitis, cervical degenerative disc disease with radiculopathy, lumbar degenerative disc disease, bilateral sacroiliitis, inflammatory polyarthritis, left shoulder bursitis and ligament tear, and left hip osteoarthritis.  AR 17.  The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner can only perform light work, can never climb ladders, ropes, or scaffolds, and cannot be exposed to hazards.  AR 20-21.  The ALJ also determined that Petitioner's impairments limit

**MEMORANDUM DECISION AND ORDER - 5**

him to walking and standing four hours in an eight-hour day and cause him to need to alternate positions every 30 minutes. AR 21. Based on the testimony of a vocational expert (a "VE"), the ALJ concluded that these limitations would prevent Petitioner from returning to his past work as a mechanic or truck driver. AR 25-26. The ALJ found, however, that Petitioner's limitations would not prevent him from performing an alternative range of light work, including working as a small products assembler, a cleaner, or a bench assembler. AR 27. The ALJ, therefore, found that Petitioner was not disabled. *Id.*

## DISCUSSION

I. The Medical Opinion Evidence

Petitioner has a long history of back issues and back pain. AR 382, 589. For many years Petitioner was able to "cope well" with this pain and work in physically demanding jobs as a mechanic. AR 203, 218-224, 589. Then, in June 2017, Petitioner was rear-ended in an automobile accident. AR 382, 589.

After this accident, Petitioner sought treatment for back pain, primarily in the form of physical therapy. AR 345. According to the records from this treatment, Petitioner's pain considerably improved between June 2017 and October 2017. AR 345, 347, 349, 352 (Petitioner responding well to physical therapy and experiencing significant improvement in his pain levels). During this period, which predates Petitioner's alleged disability onset, Petitioner continued working full time, first as a mechanic and then later transitioning to a less strenuous job as a truck driver. AR 349, 358 (Petitioner "feeling a lot better" since he switched from working as a mechanic to working as a truck driver). In October 2017, Petitioner completed physical therapy with no indication of disabling pain levels. AR 358 (Petitioner finished physical therapy in October 2017 in "much less pain"); AR 361 (upon discharge from physical

**MEMORANDUM DECISION AND ORDER - 6**

therapy, Petitioner was "feeling pretty good" with "occasional instances of mild pain, but infrequent").

Less than two months later, however, Petitioner's condition took a turn for the worse. Starting in December 2017, Petitioner reported and sought treatment for worsening and "severe" back, hip, neck, and shoulder pain. AR 371, 374, 382. Shortly thereafter, Petitioner was diagnosed with ankylosing spondylitis.[2] AR 375. Petitioner also underwent several MRIs of his back, which showed various physiological changes to Petitioner's spine, including a "small amount" of bone marrow edema in the right sacroiliac joint, mild cervical hyperlordosis, slight narrowing of the thecal sac, and narrowing of the foramina that ranged from mild to severe depending on vertebrae. AR 390, 482-483. Petitioner began taking medication for these conditions. AR 369, 372, 375.

In late February 22, 2018, while this treatment was ongoing, Petitioner left his job. AR 197, 589. Petitioner alleges that he became disabled on this date due to intolerable and debilitating pain, fatigue, and weakness. AR 38-40, 209.

Over the course of the next 21 months, Petitioner received various procedures and other treatments to alleviate his pain, including injections, nerve blocks, ablations, and eventually spinal cord stimulators. AR 409-411, 407-408, 471-472, 532-533, 540-541, 682, 700-703, 724-725, 729-732, 774. Petitioner also received additional imaging of his spine and hip. AR 657-658. The primary issue facing the ALJ in this case was assessing how Petitioner's ankylosing

---

[2] Ankylosing spondylitis is a type of arthritis that causes inflammation, pain, stiffness, and reduced flexibility in the spine. *See* The Basics on Ankylosing Spondylitis, National Institutes of Health, National Institute of Arthritis and Musculoskeletal and Skin Diseases, available at https://www.niams.nih.gov/health-topics/ankylosing-spondylitis (last accessed July 22, 2022). Symptoms of the disease vary from person to person. *Id.* According to the National Institutes of Health, "[m]any people with ankylosing spondylitis have mild episodes of back pain and stiffness that come and go[,] [b]ut others have severe, ongoing back pain and stiffness." *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

spondylitis and spinal conditions impacted his functioning during this period. This necessarily included an evaluation of how Petitioner's condition was progressing over time, including the efficacy of the treatment Petitioner was receiving.

To help with making these determinations, the ALJ considered the opinions of three consulting doctors: Dr. Myung Song, Dr. Robert Vestal, and Dr. Richard Hill. Each of these doctors reached differing conclusions about Petitioner's condition and functioning. State agency consultant Dr. Song reviewed the medical record in May of 2018 and opined that Petitioner should avoid heavy lifting and being on his feet all day, but remained capable of sedentary work and was not disabled. AR 60-64, 65-66. Three months later, on reconsideration, state agency consultant Dr. Vestal reviewed Petitioner's updated medical records. AR 74-78. Dr. Vestal found that new records, which were not available to Dr. Song, showed that Petitioner's back and neck pain had been greatly reduced by treatment. AR 78. With these improvements and with continued treatment, Dr. Vestal believed Petitioner would be able to return to light work within 12 months of his alleged disability onset. *Id.* Finally, in November 2018, Petitioner went to Dr. Richard Hill for a physical examination and assessment. Dr. Hill issued a report concluding that, among other limitations, Petitioner could only sit for 15 minutes at a time, must lay down two hours in a workday, would be absent from work more than four times a month, and could not "endure the length of a shift without frequent unscheduled rest breaks." AR 591.

These opinions presented a genuine conflict, which the ALJ had a duty to resolve. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record). The ALJ satisfied this duty by considering each opinion and determining that Dr. Vestal's opinion was the most persuasive. AR 24-25. Petitioner challenges this decision on appeal by arguing that the reasons the ALJ

**MEMORANDUM DECISION AND ORDER - 8**

provided for discrediting Dr. Song and Dr. Hill were insufficient and unsupported by substantial evidence.

II. The Standard for Reviewing the Medical Opinion Evidence

Because this case was filed after March 17, 2017, the revised regulations governing the evaluation of medical evidence apply. 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. §§ 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2). The factor of supportability looks inward at a medical opinions' bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . .

**MEMORANDUM DECISION AND ORDER - 9**

about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

The Court reviews the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").[3]

### III. The Opinions of Dr. Richard Hill

The ALJ provided three reasons for discrediting the opinions of Dr. Hill: (i) Dr. Hill did not have a treating relationship with Petitioner, (ii) Dr. Hill's opinion was based "largely" on Petitioner's subjective complaints rather than on an objective functional assessment, and (iii) Dr. Hill's opinion was not consistent with Petitioner's ability to drive in an off-road tournament and sit for long enough to travel to Disneyland. AR 25. By contrast, the ALJ found that Dr. Vestal's less restrictive opinions were more reliable because they (i) were consistent with the medical record, which showed that Petitioner had experienced improved functional capacity over time with treatment, and (ii) were supported by a "reasonable explanation" based on a review of the medical evidence. AR 24.

This analysis appropriately focused on the relative supportability and consistency of Dr. Hill's and Dr. Vestal's opinions as required by 20 C.F.R. § 404.1520c(b)(2). It is also supported by substantial evidence.

---

[3] Petitioner originally maintained that ALJs must continue to provide "specific and legitimate" reasons for discounting the opinions of medical providers under the new regulations. Pt.'s Br. at 8, 12, 14 (Dkt. 25). After briefing in this case was complete, the Ninth Circuit rejected this position. *Woods*, 32 F.4th at 787 (holding that the "specific and legitimate" standard is "incompatible" and "clearly irreconcilable" with the revised regulations).

**MEMORANDUM DECISION AND ORDER - 10**

The first reason the ALJ gave for finding Dr. Hill less persuasive is that Dr. Hill did not have a treating relationship with Petitioner. AR 25. While this would not have been sufficient reason standing alone to explain the ALJ's decision, it was an undoubtedly valid factor for the ALJ to consider. 20 C.F.R. §§ 404.1520c(c). As the ALJ was clearly aware, neither Dr. Hill, an examining consultant, nor Dr. Vestal, a state agency consultant, regularly saw or treated Petitioner. AR 24-25. The absence of this relationship was, consequently, one legitimate reason for not preferring Dr. Hill's opinion over Dr. Vestal's.

The second reason the ALJ gave for discounting Dr. Hill focused on the supportability of his findings. Specifically, the ALJ concluded that Dr. Hill's opinions were based more on Petitioner's subjective complaints, which the ALJ had separately discredited, than Dr. Hill's objective assessment of Petitioner's functioning. AR 25. This was a legitimate reason for the ALJ to reject Dr. Hill's opinions. *See Bray v. Comm'r of Social Sec.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (it is reasonable for an ALJ to discount a physician's work restrictions when those restrictions are based on a claimant's properly discounted subjective complaints).

As the ALJ correctly noted, Dr. Hill did not complete a comprehensive functional capacity evaluation of Petitioner's lifting, sitting, standing, and walking abilities. AR 590 (documenting the scope and results of Dr. Hill's physical). Dr. Hill's conclusions about Petitioner's functioning in these areas, consequently, are not easily or neatly tied to his objective examination. *Compare* AR 590 *with* AR 591. By contrast, Dr. Hill's assessment is directly and clearly based on Petitioner's subjective statements. For example, in his conclusion section, Dr. Hill quotes, incorporates, and accepts as fact Petitioner's description of how his pain impacts his work abilities. AR 591 (stating that Petitioner has "been unable to tolerate other employment" and concluding that Petitioner "has not been able to do a fulltime job" since leaving work in

**MEMORANDUM DECISION AND ORDER - 11**

February 2018). While reasonable minds could disagree about the reliability of such a report, the Court cannot say that the ALJ's treatment of the report was unreasonable or unsupported by substantial evidence. The ALJ rationally concluded that Dr. Hill's conclusions were based primarily on Petitioner's subjective complaints, not Dr. Hill's own findings or examination.[4]

Petitioner, critically, has not challenged the ALJ's rejection of his subjective complaints. This significantly narrows the scope of his challenge to the ALJ's evaluation of Dr. Hill. The primary reason the ALJ provided for rejecting Petitioner's pain reports was that Petitioner had "found relief with treatment" after applying for disability and was not, therefore, as limited as he alleged. AR 21-23. It was this same evidence, however, that led the Court to find Dr. Vestal's opinions persuasive and elevate them above the opinions of the other medical providers, including Dr. Hill. AR 24 (finding that Dr. Vestal's opinions were supported by and consistent with the evidence showing that Petitioner's functional capacity had improved over time with treatment). In discussing this evidence, the ALJ stressed that:

- In May 2018, Petitioner reported 80% pain relief from lumbar radiofrequency ablations. AR 22 (citing AR 536).
- That same month, after receiving a medial branch block, Petitioner reported that it was the "best" he had felt in years. AR 22 (citing AR 500).

---

[4] Petitioner accuses the ALJ of rejecting Dr. Hill's opinion on the false assumption that Dr. Hill did not see Petitioner and instead based his report "solely" on a review of the medical record. Pt.'s Br. at 11 (Dkt. 25). The Court does not read the ALJ's opinion so narrowly. While the ALJ acknowledged that Dr. Hill had reviewed Petitioner's medical record, the ALJ never stated that this was the *only* evidence Dr. Hill considered. To the contrary, the ALJ recognized and emphasized that Dr. Hill spoke with Petitioner. AR 25; *see also* AR 22-23, 25 (citing the portion of Dr. Hill's report summarizing Petitioner's description of his history and symptoms). These portions of the decision indicate that the ALJ knew Dr. Hill was an examining, not a reviewing consultant.

**MEMORANDUM DECISION AND ORDER - 12**

- In July 2018, Petitioner reported significant benefit from epidural steroid injections. AR 22 (citing AR 525). During this visit, Petitioner told his doctor that, while he was still having some lower back pain, the recent injections resulted in 80% improvement in his "overall neck and radicular pains." AR 525.

- In August 2018, Petitioner described the sacroiliac injections he received as "amazing." AR 22 (citing AR 631). This record further indicates that Petitioner was recently featured in an off-roading truck competition show[5] and that Petitioner's "medications are working well for the majority of what is going on, but his thoracic spine pain remains." AR 631.

- In April 2019, Petitioner reported up to 70% pain relief after a spinal cord stimulator trial. AR 22 (citing AR 682).

- In July 2019, after Petitioner had a spinal cord stimulator permanently implanted, Petitioner reported almost full relief of his lower back pain. AR 22 (citing 752 and 755). Given the efficacy of this treatment, Petitioner expressed interest in having a cervical stimulator implanted to help with his continuing neck pain. AR 24, 752, 755.

- Petitioner proceeded with this treatment, and, in November 2019, Petitioner reported 90% pain relief from a cervical spinal cord stimulator. AR 22 (citing AR 774).

- The medical records indicate that with the above treatment Petitioner was able to travel, first to Las Vegas and later to Disneyland. AR 22-23 (citing AR 692 and 757).

The ALJ found that these records negate Petitioner's claim of experiencing such severe back and neck pain during 2018 and 2019 that he could not work. AR 21-23. This reasoning, which

---

[5] The medical record contains a note indicating that Petitioner's doctor signed a form saying Petitioner was medically fit to participate in this competition. AR 531.

**MEMORANDUM DECISION AND ORDER - 13**

stands uncontested and which the Court must credit,[6] undergirds the ALJ's rejection of Dr. Hill's opinions. Having rejected Petitioner's pain complaints as inconsistent with the medical record, the ALJ had a legitimate reason for finding medical opinions that relied heavily on these complaints, such as Dr. Hill's, less persuasive than opinions, like Dr. Vestal's, that better aligned with Petitioner's treatment history. *Bray,* 554 F.3d at 1228.

Even if the ALJ erred in this regard, however, that would not warrant a reversal. *See Batson*, 359 F.3d at 1197 (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where the ALJ provided several other valid reasons for the decision). The ALJ provided a third and final legitimate reason for rejecting Dr. Hill's opinions. The ALJ found that Dr. Hill's opinions did not accord with Petitioner's ability to drive in an off-road tournament and "sit long enough" to travel to Disneyland. These findings were eminently reasonable. Dr. Hill found that Petitioner had "too much pain holding the steering wheel" to drive at work. AR 590. In addition, Dr. Hill opined that Petitioner could only sit for 15 minutes at a time. These opinions directly conflicted with Petitioner's leisure activities, including competitive truck driving, and presented a valid reason for the ALJ to reject Dr. Hill's opinions in favor of Dr. Vestal's.[7] *Ford v. Saul*, 950 F.3d

---

[6] Petitioner has waived any challenge to the ALJ's adverse credibility findings by failing to raise this challenge in the briefing. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived) and *Carmickle v. Comm'r of Social Sec. Admin*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (refusing to address an ALJ's finding where the Petitioner "failed to argue [the] issue with any specificity in his briefing."). The Court will not raise this challenge on his behalf.

[7] Petitioner argues that there is no conflict because he used a scooter while traveling. Pt.'s Br. at 10 (Dkt. 25). But this only further supports the ALJ's conclusion that Dr. Hill grossly underestimated how long Petitioner can sit at one time.

**MEMORANDUM DECISION AND ORDER - 14**

1141, 1155 (9th Cir. 2020) (conflict with a claimant's reported activities is a specific and legitimate reason for refusing to accept a treating provider's opinions).

In summary, the ALJ discussed the consistency and supportability of Dr. Hill's opinions as required by 20 C.F.R. § 404.1520c(b)(2) and, as part of this discussion, provided legitimate reasons for finding Dr. Hill's opinions unpersuasive.

   IV. The Opinions of Dr. Myung Song

The ALJ provided two reasons for rejecting Dr. Song's opinions in favor of the more recent opinions of Dr. Vestal. First, the ALJ found that Dr. Song's opinion was not consistent with Petitioner's ability to travel or participate in an off-road driving competition. AR 24. Second, the ALJ found that Dr. Song's opinion conflicted with subsequent medical records, which showed significant improvement in Petitioner's condition. *Id.* The ALJ elected instead to credit Dr. Vestal, who had reviewed more recent records than Dr. Song and found that these records contained new and material evidence. AR 24, 78.

This analysis properly focused on respective supportability and consistency of the medical opinions. It was also reasonable. Where two agency doctors review the medical record on different dates and reach different opinions about a claimant's functioning, it is well within reason for the ALJ to elect to credit the consultant who had access to more recent, comprehensive, and up-to-date medical records. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (where a claimant's condition is progressively deteriorating, the most recent medical report is frequently the most probative); *see also Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (unpublished) (an ALJ properly rejected an older opinion in favor of a newer opinion that was based on "more detailed and comprehensive information" than was available to the

**MEMORANDUM DECISION AND ORDER - 15**

doctor who issued the older opinion). This is particularly true where, as here, the ALJ found that the claimant's condition was improving over time with treatment.

V. The ALJ's Balancing of the Evidence

As part of his attack on the ALJ's persuasiveness findings, Petitioner raises a general challenge to how the ALJ balanced, evaluated, and discussed the evidence as a whole. Petitioner frames this challenge in a variety of ways, arguing that the ALJ (i) selectively ignored evidence favorable to his position, (ii) failed to "properly explain" why certain evidence did not support Petitioner's preferred outcome, and (iii) improperly cherry-picked the evidence to reach a finding of non-disability. Pt.'s Br. at 9-10, 13 (Dkt. 25) and Pt.'s Reply at 3 (Dkt. 27). These arguments are not factually or legally availing.

To begin, the evidence that Petitioner accuses the ALJ of ignoring is all evidence that the ALJ discussed. For example, Petitioner relies heavily on his own testimony to argue that the ALJ should have credited Dr. Hill or Dr. Song. Pt.'s Br. at 9-10, 13 (Dkt. 25). But the ALJ addressed and rejected this testimony. AR 21-23.[8] Absent a viable challenge to these adverse credibility findings, there is no basis to reverse and remand the case for the ALJ to reconsider his assessments of the medical opinions in light of discredited testimony. Similar reasoning applies to Petitioner's dependance on the opinions of Dr. Daniel Smith. Petitioner correctly points out that Dr. Smith believed Petitioner was disabled and that this opinion is, at a very general level, more consistent with Dr. Hill's opinions than Dr. Vestal's. Once again, the ALJ did not ignore this evidence. The ALJ explicitly considered the records of Dr. Smith and recognized that Dr.

---

[8] In making these findings, the ALJ did not expressly discuss each element of Petitioner's testimony. But that has never been required. *See Treichler*, 775 F.3d at 1103 (an ALJ's analysis of a claimant's testimony "need not be extensive"); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

**MEMORANDUM DECISION AND ORDER - 16**

Smith had "opined, on several occasions, [that Petitioner] could not work." *Id.* The ALJ provided several reasons, which Petitioner has not challenged, for discounting these statements. *Id.*

The final category of evidence Petitioner faults the ALJ for disregarding are MRIs, imaging, and treatment notes in which Petitioner's doctors recommend that he use a cane for stability. Pt.'s Br. at 10, 13 (Dkt. 25). The ALJ, however, fairly and reasonably summarized this evidence. AR 22. The ALJ agreed that this evidence established that Petitioner suffers from several conditions causing back, neck, shoulder, and hip pain and acknowledged that it supported Petitioner's "subjective allegations." AR 17, 22. The ALJ simply did not agree that this evidence dictated a finding of disability. AR 22-25. This is not the same thing as ignoring probative evidence. Where evidence establishes that a claimant has a medical condition that causes chronic pain or fatigue, this fact alone does not answer the question of whether a claimant is disabled. The ALJ must consider the severity of the claimant's pain or other limitations. *See Mullis v. Astrue*, No. CV 11-0542 JPR, 2012 WL 71708, at *6 (C.D. Cal. Jan. 10, 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working") (citing *Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir. 1982)); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute.").

At heart, Petitioner's argument is not that the ALJ ignored significant evidence showing that Petitioner had ankylosing spondylitis, degenerative disc disease, and arthritis and associated pain, but that the ALJ did not draw the inferences from this history that Petitioner would have preferred. This is not a basis for reversing and remanding the ALJ's decision. The role of the

**MEMORANDUM DECISION AND ORDER - 17**

Court in reviewing the Social Security Commissioner's decisions is "a limited one." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence supports the ALJ's findings.  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).  In determining whether such evidence exists, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, the ALJ was faced with a legitimate conflict within the medical record regarding how much Petitioner's pain and associated medical conditions impeded his ability to function. The ALJ provided valid reasons for resolving this conflict by adopting Dr. Vestal's opinions over Dr. Hill's or Dr. Song's.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 25) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: August 15, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**